Ana Celia Padovani, Plaintiff and Appellee, *v.* Angel Irizarry, Defendant and Appellant.

No. 7650. Argued June 3, 1938.—Decided July 28, 1938.

*Enrique Báez García* for appellant. *J. A. Suris Agrait* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Four appeals have been jointly prosecuted upon the record herein.

On June 25, 1937, Ana Celia Padovani brought, in the District Court of Mayagüez, an action for maintenance and support against her husband, Angel Irizarry. After hearing' the case the court, on September 20, 1937, rendered judgment against the defendant who was ordered to pay to the plaintiff a monthly allowance of thirty dollars. Thereupon the defendant appealed.

The notice of appeal was filed on September 25, 1937, and on the same day the defendant presented a motion to dissolve the attachment levied on his property to secure the allowance, and two days afterward he filed another motion to set aside the judgment. On the 4th of the following Octo-

ber, the plaintiff moved to dismiss both motions and requested that the defendant be summoned to appear and show cause why he should not be punished as for contempt of court. On October 26, after hearing the parties, the court denied the motions of the defendant, who was convicted of contempt on the 2d of the following November. The appellant also appealed to this court from the above adverse decisions including the judgment of contempt.

Both parties have filed extensive briefs covering all the questions involved in the four appeals. However, from the conclusion we have reached regarding the case, it will only be necessary to consider and determine the first assignment of error in the first of the appeals in order to properly dispose of them all.

Said first assignment refers to the failure on the part of the trial court to apply the provisions of section 148 of the Civil Code, 1930 ed.

 In the complaint it was alleged that the plaintiff, being sixteen years of age, married Angel Irizarry, the defendant, on December 19, 1936; that the spouses lived together under the same roof from that time until March 16, 1937, ''when the plaintiff was ejected from the house of the defendant'' and went to live with her parents; that the plaintiff needs support from her husband who refuses to furnish the same; and that the defendant owns houses yielding to him a monthly income of fifty-eight dollars and also a shop from which he derives profits amounting to seventy-two dollars monthly; and that he is, therefore, able to pay her an allowance of sixty dollars a month.

The defendant in his answer admitted the marriage, his living together with his wife subsequent thereto, and the separation. He denied, however, that the separation was due to his ejecting the plaintiff from his house, the fact being that she left of her own volition. He recognized that it was his duty to support her but denied that he was in a position to pay her an allowance of sixty dollars a month. He stated

how much he had and how much he was earning. He alleged that he was willing to receive his wife "in the home set up by them when they contracted marriage."

The case went to trial. At the close of plaintiff's evidence, the defendant said through his counsel:

"We are going to ask, under the provisions of section 148 of the Civil Code of Puerto Rico, that the court render judgment against the plaintiff ordering her to go and live with her husband in his home where he will furnish her with support, medical assistance, medicine, etc."

The judge answered:

"The court leaves the legal question pending to be determined on its merits."

The defendant introduced his evidence and the court, in deciding the case in the manner we have stated, expressed itself partly as follows:

"From the evidence introduced by the parties, the court has reached the conclusion that due to the difference of age existing between the defendant and the plaintiff, to their conflicting nature and temperament, or to some other circumstance unknown to the court, there was no harmony in the conjugal relations between the litigants, and that as a result of heated arguments or admonitions and reprimands from the defendant the plaintiff was compelled to leave the home set up for her by the defendant and to go and live with her parents, and under these circumstances and in accordance with subdivision 1, section 144 of the Civil Code in force, 1930 ed., the defendant is bound to support the plaintiff as his spouse."

The trial court failed to refer expressly in his opinion to section 148 of the Civil Code, 1930 ed., and confined itself to the application of section 144 which makes it incumbent, first, on the spouse to give support when proper and when there are two or more persons bound to give it.

Section 148, *supra,* provides as follows:

"The person obliged to render support may, if he so elects, either pay the amount required to be paid or receive and maintain in his own dwelling the person having a right to such support."

In his commentaries on section 149 of the Spanish Civil Code, equivalent to section 148 of our code, Manresa says:

"A comparison of the terms of said section 78 of the Civil Marriage Act under discussion shows an important new departure in the law in this respect, because what formerly was merely an exception, granted for the benefit of the party of moderate means having the obligation to give support so as not to compel him to perform his obligation to the detriment of his own needs, has now become a right that he can exercise in any event, although he may have plenty of means to furnish support in cash or outside of his home, since the law gives him the option to supply it in either form. From which is inferred that, if the recipient refuses to live in the home of the party charged, the former will forfeit his or her right to support.

"The reason for such departure is obvious and understandable, because although in some cases the taking of a relative into the home of the party charged might cause complications and bad feelings, in other cases it might perhaps be the means of correcting and reforming the recipient by reason of the dependency and obligation in which the latter is placed to conform to the rules of the home where he or she is admitted and cared for. This sole consideration would be a sufficient justification for the reform introduced in the law.

"However, the principle enunciated in this section must not be accepted inconditionally, as there are cases where the party charged can not avail himself of the right of option granted, because it may not be possible for the recipient to live in the home and company of such party . . . .

"*&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Apart from the above general considerations regarding the section, the Supreme Court, in construing the same, has been compelled to restrict said right of option so as not to bring it into conflict with other rights, as is shown by the judgment of February 5, 1878, rendered prior to the enactment of the Code, and the subsequent decisions of November 25, 1890, July 5, 1901, and December 31, 1902.

"As a general rule, under a doctrine of the Supreme Court of Spain set up in a judgment of July 5, 1901, the right of option which section 149 of the Civil Code of Spain allows to the person obliged to render support, to either pay the amount required to be paid, or receive and maintain in his own dwelling the recipient, is not absolute or inflexible, but is subordinated to the double condition that the person obliged to render such support should have a home of his own, and that there be no legal or moral obstacle to prevent

the recipient from moving into the same and receiving therein the sum of comforts and succor, both natural and civil, which are juridically meant by the word support; because if either of these elements is lacking, the election becomes impossible both in fact and in law, and the obligation to render support must be fulfilled in the first way indicated." 1 Manresa, *Comentarios al Código Civil Español* (5th ed.), p. 686 *et seq.*

In *Moll* v. *Llompart*, 17 P.R.R. 666, and in *Maeso* v. *Ortiz*, 41 P.R.R. 155, this Supreme Court held that the husband's offer to support his wife in his own home may be refused when legal, moral, or social reasons justify such refusal, and, after considering the attendant circumstances brought to light by the evidence, it concluded that the refusal of the wife to receive support by returning and living with her husband was well founded, and therefore the election made by the husband was unavailable.

Are there to be found in the instant case the legal, moral, or social reasons which preclude the carrying out of the option made? After examining the record, we think that this question must be answered in the negative.

As we have seen, the district judge reached the conclusion that "the plaintiff was compelled to leave the home set up for her by the husband"; yet according to the evidence, as stated by the judge himself in his opinion:

" . . . . the court finds that it has been shown: That the plaintiff and the defendant are married, there being a great difference in their respective ages, because while the plaintiff is.16 years old and has been married for more than a year, the husband is over 50 years of age; that shortly after their marriage the spouses began to have serious misunderstandings in their marital relations, the plaintiff alleging that the same occurred because her husband failed to treat her well and the defendant alleging that such frequent quarrels arose because he would reprimand his wife who was unwilling to take any advice. . . . "

The difference in age by itself is not sufficient justification for the separation. It was known to the plaintiff at the time of the marriage. It is indeed inadvisable that this kind of

unions should be contracted, but they are contracted as a matter of fact and experience shows that they can survive. As to the "serious misunderstandings in their marital relations" mentioned by the judge in his findings, nothing appears in that respect from the plaintiff's testimony at the trial nor from that of Rafael Padovani, her father and only other witness. It is in defendant's evidence, in his own testimony, that the following statements appear:

". . . . that the reason for the separation was that she disagreed with his direction, with his advices, with his management of the home, and that she would always say to him that she was born that way, and that she always maintained that attitude. That he is about forty-seven years old, that they have been married about six or seven months . . . . that on one occasion after leaving the home she sent to the shop for groceries which were sent to her by his clerk; that he never refused to please her except on one occasion when she went to get money to play policy (*bolita*), that he refused and she went into a rage and did not come again to the shop, calling him a miser; that after she left the home he tried to bring her back, and that he did this only once because she received his messenger very badly and told him never to call again; that he sent word to her that he wished to talk to her because she was wrong in her attitude and that he wanted to smooth things over. That she is the daughter of a very hard-working mother; that after he went to the plaintiff's home she bothered him, was incorrigible . . . . that he has always been willing and is in a position and ready to have in his home the plaintiff, his wife Ana Celia Padovani, and to give her in it everything she may need, and that he told this to the plaintiff's attorney; that he has all the time been willing because he is a sensible man; that he called her father's attention and told him that she was a young girl, that if she wished she could make a good wife, that she was the only woman whom he would marry because he loved her, and that he loved her parents because they are good people. He likes her mother; but the girl is incorrigible although he esteems her."

Except for the wife's demand for money to play policy and the husband's refusal, which made the wife go into a rage and call her husband a miser, no concrete fact whatever appears from the testimony upon which to rely for passing

upon the seriousness or gravity of the quarrels. The rest of it are conclusions, and if the husband who makes such statements is willing to receive the wife whom he wants in his home, we fail to see that they are of any weight against him.

There is not the slightest evidence or imputation of the occurrence of anything immoral to bar the union of the spouses in the said home. Not even social prejudices or differences of race, religion, or culture are apparent. Everything induces us to believe that if the youthful wife were properly advised she might be able to fulfil the difficult and perhaps painful duty which she took upon herself when she married, and it is incumbent upon the court to see to it that such duty is performed and not to legalize separations on insufficient grounds.

For the foregoing reasons a reversal lies of the judgment appealed from, and the attachment levied in pursuance thereof and the conviction of contempt are left without a basis.

Now, we find in the record that the following incident occurs while the plaintiff was testifying:

"On the witness being asked as to what happened to her to induce her to leave, the attorney for the defendant objected to the question and the court ruled that the question was immaterial. Upon the witness being again questioned as to what happened on that day when she says she left the house, the attorney for the defendant again objected because it was immaterial and the court sustained his objection and further said that that would be evidence for the action for divorce, and that the evidence should be confined to the situation of this lady and to the financial circumstances of the defendant."

As it might be inferred from the above that the objections from the defendant sustained by the court were the cause of the plaintiff's evidence being incomplete, it does not seem fair to finally dispose of the case without affording the plaintiff another opportunity to show the grounds that led her to the separation, for they might be of such a

604

character as to actually render unavailable the option granted by law to the husband.

Therefore, the judgment should be reversed and the case remanded for further proceedings not inconsistent with this opinion. We must, however, remind the wife that suits are expensive and that small fortunes—such as the one accumulated by her husband prior to his marriage seems to be—can not stand such expense, so that by her attitude the plaintiff might be destroying, perhaps unnecessarily, not only her own home but also the source from which might come the support sought.

Mr. Justice Travieso took no part in the decision of this case.